1

2

3

4

5

6

7

8                                 IN THE UNITED STATES DISTRICT COURT

9                                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10    LORENA MEYER,

11              Plaintiff,                              No. 2:10-cv-2786 GGH PS

12         vs.

13    SANTANDER CONSUMER USA,

14

15              Defendant.                             <u>ORDER</u>

16    _____/

17              This is a federal question action originally filed on October 14, 2010 by plaintiff

18    Lorena Meyer, proceeding pro se and in forma pauperis, involving a claim for violation of the

19    federal Fair Debt Collection Practices Act ("FDCPA").  It also includes supplemental state law

20    claims for violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA")

21    and invasion of privacy.[1]  (<u>See</u> Dkt. No. 9.)

22              On June 6, 2012, defendant Santander filed a motion for partial summary

23    judgment, or in the alternative, for summary adjudication of claims noticed for hearing on July

24

25         [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C.
      § 636(c)(1), and the case was referred to the undersigned for all further proceedings and entry of
26    final judgment.  (Dkt. Nos. 15, 26, 27.)

                                                  1

1   19, 2012.  (Dkt. No. 51.)  On June 12, 2012, plaintiff filed an opposition, and on July 6, 2012,

2   defendant filed a reply brief.  (Dkt. Nos. 57, 58.)

3          Subsequently, on July 13, 2012, after determining that oral argument would not be

4   of material assistance in resolving the motion, the court vacated the hearing on the motion.  (Dkt.

5   No. 60.)  Nevertheless, due to some discrepancies and inconsistencies between various

6   documents filed in support of defendant's motion, which appeared to be typing errors or the

7   result of careless drafting, the court ordered defendant to file a supplemental declaration,

8   attaching any appropriate documentary evidence, clarifying the inconsistencies.  (Dkt. No. 60.)

9   In turn, plaintiff was permitted to file a supplemental opposition to defendant's supplemental

10  materials, after which the motion was to be submitted on the record without oral argument.  (Dkt.

11  No. 60.)  On July 27, 2012, defendant filed an amended memorandum, amended statement of

12  undisputed facts, request to take judicial notice, and an amended declaration in support of the

13  motion.  (Dkt. Nos. 61-64.)  Thereafter, on August 7, 2012, plaintiff filed a supplemental

14  opposition.  (Dkt. No. 65.)

15         After considering the papers in support of and in opposition to the motion, the

16  court's record in this matter, and the applicable law, the court now issues the following order.

17  <u>BACKGROUND FACTS</u>[2]

18         According to the operative second amended complaint, plaintiff financed the

19  purchase of a Kia van through lender Triad in 2004.  (Plaintiff's Second Amended Complaint,

20  Dkt. No. 9 ["SAC"] ¶ 5.)  After she made payments for several years, Triad allegedly stopped

21  sending her payment notices and made it impossible for her to contact the company to make her

22  payments.  (<u>Id</u>.)  When Plaintiff finally made contact through the Triad toll free customer service

23  line, a Triad customer service representative allegedly informed plaintiff that Triad had gone out

24  of business and/or had received some type of bail-out; had written off their small customer debts,

25  _____

26  [2] The following facts, disputed and undisputed, are outlined for background purposes
    only.

2

1    including her "few remaining payments"; and would mail her the title to her Kia vehicle.  (Id.;

2    see also Plaintiff's Opposition to Motion for Summary Judgment, Dkt. No. 57 at 6:11-14.)  Some

3    time later, the vehicle was repossessed by individuals employed by defendant Santander "who

4    she thinks had changed its name from Triad," and she never received title to the vehicle.  (SAC

5    ¶ 5.)  Plaintiff alleges that she did not receive anything in the mail from Santander until after

6    Santander took possession of her vehicle, she called Santander several times and mailed it a

7    certified letter to discuss the loan with them after she learned of its existence, but Santander

8    never responded.  (Dkt. No. 57 at 5:21-6:5.)  Plaintiff contends that Santander "set the stage to

9    cause her to default on a few remaining payments so that it could repossess her car, and resell the

10   car for additional profits."  (SAC ¶ 5.)  Additionally, plaintiff alleges that Santander contacted

11   her to collect the alleged remaining debt multiple times, including within one year preceding the

12   filing of her complaint, and that its conduct violated the FDCPA and RFDCPA and constituted

13   an invasion of her privacy.  (SAC ¶¶ 6-7.)

14           Defendant Santander's version of the story is different.  As will be discussed in

15   greater detail below, Santander claims that it purchased Triad's portfolio and operations between

16   June 2008 and November 2008, thereby also acquiring plaintiff's loan and its related records and

17   documentation.  (Amended Declaration of Wayne Nightengale, Dkt. No. 64, ¶¶ 3, 6, 9.)

18   According to Santander, neither Triad's nor Santander's records reflect an agreement by either

19   entity to waive the "significant balance" owing on the loan, and it ultimately repossessed

20   plaintiff's vehicle on August 31, 2010 because her loan was in default and then pursued

21   collection of the remaining balance of the loan with the assistance of third-party debt collectors.

22   (Dkt. No. 53; Dkt. No. 64, ¶¶ 5, 11-12, Ex. B.)  Moreover, Santander asserts that plaintiff could

23   not reasonably have believed that her debt was forgiven, because plaintiff on several occasions

24   allegedly informed customer service agents that she was unemployed, living in her vehicle, and

25   unable to make payments.  (Dkt. No. 64, Ex. D, at pp. 46, 51, 52, 53.)

26   \\\\\

1    As noted above, plaintiff in this action asserts claims for violation of the FDCPA,

2    violation of the RFDCPA, and invasion of privacy.  Defendant has moved for partial summary

3    judgment, in particular with respect to plaintiff's FDCPA claim.

4    DISCUSSION

5        Summary Judgment Standard

6      The "purpose of summary judgment is to pierce the pleadings and to assess the

7    proof in order to see whether there is a genuine need for trial."  Matsushita Elec. Indus. Co. v.

8    Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Summary judgment is appropriate when it is

9    demonstrated that there exists "no genuine dispute as to any material fact and that the movant is

10   entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Under summary judgment

11   practice, the moving party

12     always bears the initial responsibility of informing the district court
       of the basis for its motion, and identifying those portions of "the
13     pleadings, depositions, answers to interrogatories, and admissions
       on file, together with the affidavits, if any," which it believes
14     demonstrate the absence of a genuine issue of material fact.

15   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

16     If the moving party meets its initial responsibility, the burden then shifts to the

17   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

18   Matsushita, 475 U.S. at 585-86.  In attempting to establish the existence of this factual dispute,

19   the opposing party may not rely upon the allegations or denials of its pleadings but is required to

20   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

21   in support of its contention that the dispute exists.  See Matsushita, 475 U.S. at 586.  The

22   opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

23   affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477

24   U.S. 242, 248 (1986); T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

25   (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury

26   could return a verdict for the nonmoving party, see Anderson, 477 U.S. at 248.

1         In the endeavor to establish the existence of a factual dispute, the non-moving

2    party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4    versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  The evidence of the non-

5    moving party is to be believed and all justifiable inferences are to be drawn in its favor.  See

6    Anderson, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the

7    opposing party's obligation to produce a factual predicate from which the inference may be

8    drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

9    aff'd, 810 F.2d 898 (9th Cir. 1987).  To demonstrate a genuine issue, the opposing party "must

10   do more than simply show that there is some metaphysical doubt as to the material facts... Where

11   the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

12   there is no genuine issue for trial."  Matsushita, 475 U.S. at 586-87 (internal citation and

13   quotation omitted).

14        In this case, it is clear that the parties strongly dispute whether defendant's

15   repossession of plaintiff's car and other collection efforts were improper and in violation of the

16   substantive requirements of various statutes.  Nevertheless, defendant's motion for partial

17   summary judgment here is narrowly focused on a single issue – whether Santander was a creditor

18   collecting its own debt (as opposed to a debt collector collecting the debt of another) and thus

19   exempt from liability under the FDCPA.

20        FDCPA Claim

21        The FDCPA prohibits a "debt collector" from using "any false, deceptive, or

22   misleading representation or means in connection with the collection of any debt."  15 U.S.C. §

23   1692e.  For purposes of the FDCPA, a "debt collector" is "any person who uses any

24   instrumentality of interstate commerce or the mails in any business the principal purpose of

25   which is the collection of any debts, or who regularly collects or attempts to collect, directly or

26   indirectly, debts owed or due or asserted to be owed or due *another*."  15 U.S.C. § 1692a(6)

(emphasis added).  A creditor is not a "debt collector" under the FDCPA.  See Rowe v. Educational Credit Management Corp., 559 F.3d 1028, 1031 (9th Cir. 2009); Schlegel v. Wells Fargo Bank, N.A., 799 F. Supp. 2d 1100, 1103-04 (N.D. Cal. 2011).  As a matter of policy, this is because the FDCPA is "aimed at debt collectors who might have no future contact with the consumer and often are unconcerned with the consumer's opinion of them...Where there is an ongoing relationship, creditors arguably have an incentive to treat debtors with honesty and respect."  Schlegel, 799 F. Supp. 2d at 1105.[3]

A creditor is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default *solely for the purpose of facilitating collection of such debt for another*."  15 U.S.C. § 1692a(4) (emphasis added).  Thus, "collecting debt *not for another*, whether or not the debt is assigned in default, makes one a creditor" not subject to the FDCPA.  See Schlegel, 799 F. Supp. 2d at 1104 (emphasis added).  At the same time, however, this provision prevents a debt collector from masquerading as a creditor by the mere technicality of purchasing the debt in default so that title technically rests in itself.  Id. at 1105.

Here, Santander has produced substantial evidence that it was plaintiff's creditor as opposed to a debt collector.  Santander submitted a declaration from Wayne Nightengale, Santander's Senior Vice-President of Servicing and a custodian of records for Santander, who stated that Santander is an automobile finance company, whose principal business is originating automobile retail installment sales contracts on direct and indirect lending program platforms; only services its own obligations, some of which includes the obligations owed to companies that Santander purchased and which are related by common ownership or affiliated by corporate control; and does not service obligations that are owed to other persons or companies that were

---

[3] Of course, this does not mean that creditors always treat consumers with honesty and respect in their collection efforts.  However, based on this general presumption, Congress has generally exempted creditors from liability under the FDCPA.

1   not purchased by Santander or which are not related by common ownership or affiliated by

2   corporate control.  (Dkt. No. 64, ¶¶ 1-2.)  Mr. Nightengale further states that:

3               On June 20, 2008, Santander began purchasing Triad Financial.
            The portfolio purchase of Triad, which included approximately
4           $3.1 billion in unencumbered receivables and $1.6 billion in
            unsecuritized debt, was completed August 2008.  The purchase of
5           Triad's remaining facilities and employees was completed
            November 2008.  Santander acquired Plaintiff's account as a result
6           of this acquisition/conversion.

7   (Dkt. No. 64, ¶ 3.)  Mr. Nightengale adds that Triad's records of plaintiff's account were

8   transferred in whole without alteration to Santander on or about November 8, 2008 and became

9   Santander's business records.  (Dkt. No. 64, ¶ 6.)  He attaches to his declaration the Retail

10  Installment Sales Contract executed by plaintiff, the payment history of plaintiff's account, and

11  the activity logs related to plaintiff's account as maintained by Triad and Santander.  (Dkt. No.

12  64, Exs. A, B, & D.)  Mr. Nightengale states that Santander has never operated as a third-party

13  debt collector for Triad, but was servicing its own obligation that Santander had purchased from

14  Triad when it ultimately repossessed plaintiff's vehicle on August 31, 2010 and attempted to

15  collect any deficiency remaining on the loan.  (Dkt. No. 64, ¶¶ 2, 9, 12, Ex. C.)  According to Mr.

16  Nightengale, Santander did retain third party debt collectors to assist with collection on defaulted

17  loans.  (Dkt. No. 64, ¶ 5.)

18              Plaintiff offers no actual controverting evidence, but merely argues that Santander

19  has not provided the actual paper documentation of the sale of Triad's assets to Santander,

20  including plaintiff's account, to prove that Santander was her creditor.[4]  This is an insufficient

21  response, because the court concludes that Santander has discharged its initial burden to identify

22  evidence that demonstrates the absence of a genuine issue of material fact as to Santander's

23  creditor status.

24  \\\\\

25  _____

26      [4] Plaintiff's other contention –that Triad merely changed its name to Santander (SAC ¶ 5)
    –does not assist plaintiff, because in that scenario Santander would still be plaintiff's creditor.

1    As an initial matter, Mr. Nightengale submitted a declaration outlining the above

2    facts under penalty of perjury and, as Senior Vice President of Servicing and a custodian of

3    records for Santander, was competent to testify to such information.  Furthermore, other

4    documentation was submitted that identified Santander as a creditor.  The September 1, 2010

5    "Notice of Intention to Dispose of Motor Vehicle" sent to plaintiff after Santander repossessed

6    her vehicle on August 31, 2010 made clear that Santander was the creditor repossessing the

7    vehicle.  (Dkt. No. 57, Ex. F; Dkt. No. 64, Ex. C)  A March 8, 2011 collection letter by debt

8    collector Synergetic Communication, Inc., submitted by plaintiff along with her initial

9    opposition, also clearly identifies Santander as the creditor.  (Dkt. No. 57, Ex. G.)

10    Additionally, a September 27, 2011 collection letter from debt collector Accounts

11    Receivable Management, Inc. ("ARM") also listed the creditor as Santander.  (Dkt. No. 57, Exs.

12    D & E.)  In the context of Santander's previous motion to dismiss, there was some confusion

13    regarding a sentence in the body of this letter, which stated: "Santander Consumer USA Inc.

14    ("SCUSA") is servicing the account on behalf of HSBC and Accounts Receivable Management,

15    Inc. was hired to collect on behalf of SCUSA."  (Id.)  This statement arguably suggests that

16    Santander may not be the actual creditor and thus raised a factual issue inappropriate for

17    resolution on a motion to dismiss.

18    However, on this motion for summary judgment, Santander has submitted a

19    declaration of Thomas Novak, In-House Counsel and a custodian of records for third-party debt

20    collector ARM, who stated that, after reviewing the documentation related to plaintiff's file, "the

21    inclusion of [the above-quoted] sentence in the letter was a mistake; the entire sentence should

22    not have been included as Santander was the original creditor as referenced in the upper right

23    hand corner of the letter.  ARM has no information to suggest that Santander was servicing the

24    account on behalf of another, that HSBC hired Santander to collect this debt, or that HSBC was

25    ever involved with Ms. Meyer's account in any way."  (Dkt. No. 53, ¶¶ 1-2, 6-8, Ex. A.)  This is

26    confirmed by Mr. Nightengale's declaration (dkt. no. 64, ¶ 14), and even plaintiff appears to

1   agree that HSBC was never involved with her loan.  (See Dkt. No. 57 at 5:15-21.)[5]

2           Plaintiff also argues that she never gave Triad permission to "sell her vehicle or

3   contract to Santander" and that such a sale would violate the contractual provision requiring any

4   changes to the contract to be in writing and signed by both parties.  (Dkt. No. 57, Ex. C; Dkt. No.

5   65 at 4:19-5:7.)  The court observes that a contractual right can generally be assigned unless

6   assignment is validly precluded by the contract, see TransWorld Airlines, Inc. v. American

7   Coupon Exchange, Inc., 913 F.2d 676, 685 (9th Cir. 1990), and that the assignment here did not

8   appear to involve a change to the substantive terms of the contract, such as payment amounts,

9   due dates, etc.  Nevertheless, even if it did, it would not support a claim under the FDCPA.

10          Therefore, the court finds that plaintiff, in response to Santander's discharge of its

11  initial burden under Fed. R. Civ. P. 56, has failed to tender evidence of specific facts to establish

12  a genuine dispute as to whether Santander was a creditor collecting its own debt.[6]  The

13  uncontroverted evidence demonstrates that by virtue of Santander's purchase of Triad's assets

14  and operations, Santander became plaintiff's creditor and was collecting the debt on its own

15  behalf.  Additionally, in light of the fact that Santander purchased Triad's entire assets and

16  operations, which no doubt included loans in default and loans not in default, the court cannot

17  draw a reasonable inference that Santander is merely a debt collector masquerading as a creditor

18  by buying up selected loans in default.  For these reasons, the court concludes that Santander is a

19  creditor exempt from the FDCPA, and that Santander's motion for partial summary judgment

20  with respect to plaintiff's FDCPA claim should be granted.

21

22          [5] Santander further argues that even assuming _arguendo_ that HSBC did have an interest in
    plaintiff's loan, Santander had also purchased HSBC Auto Finance's automobile finance
23  contracts and security interests on August 27, 2010, and that Santander would still have been
    plaintiff's creditor at the time of the August 31, 2010 repossession and subsequent collection
24  efforts.  (Dkt. No. 64, ¶ 4.)

25          [6] The court notes that this remains true even if the statements in plaintiff's briefing and
    operative second amended complaint were liberally construed as statements made under penalty
26  of perjury in an affidavit, declaration, or verified complaint.

1          State Law Claims

2          As noted above, plaintiff's operative second amended complaint also asserts state

3   law claims for violation of the RFDCPA and invasion of privacy.  In her briefing and other

4   filings, plaintiff further makes reference to a class action against Santander in Alameda County

5   Superior Court involving various claims under California law, including the Rees-Levering

6   Motor Vehicle Sales and Finance Act (a claim not currently asserted in the operative complaint).

7          The court expresses no opinion regarding the merits of plaintiff's state law claims.

8   Instead, as there are no federal claims remaining, the court declines to exercise supplemental

9   jurisdiction over such state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may

10  decline to exercise supplemental jurisdiction over a claim...if – the district court has dismissed all

11  claims over which it has original jurisdiction"); see also Acri v. Varian Associates, Inc., 114 F.3d

12  999, 1000-01 (9th Cir. 1997) (" 'in the usual case in which all federal-law claims are eliminated

13  before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the

14  remaining state-law claims' "), quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350

15  n.7 (1988).  Here, given that the only federal claim has dropped out in the context of a motion for

16  summary judgment and that a trial date has not yet been set, dismissal of the state law claims

17  without prejudice is appropriate.[7]

18  \\\\\

19

20          [7] Furthermore, the court has considered whether plaintiff should be provided with another opportunity to amend her complaint to potentially allege diversity jurisdiction.  Plaintiff is
21  alleged to be a resident of California, but the second amended complaint does not allege a state of citizenship for Santander, and no amount in controversy is alleged.  The papers submitted
22  along with plaintiff's various filings indicate correspondence with Santander addresses in Texas. Nevertheless, even assuming the parties are diverse, the court has already carefully outlined and
23  explained the requirements of federal subject matter jurisdiction, and in particular, the requirements for alleging diversity jurisdiction in the court's first screening order pursuant to 28
24  U.S.C. § 1915.  (See Dkt. No. 4.)  Instead of curing the articulated deficiencies in plaintiff's original complaint based on diversity jurisdiction, both of plaintiff's subsequent amended
25  complaints have been premised on federal question jurisdiction.  Given the court's previous comprehensive instructions and the fact that plaintiff has already been granted two opportunities
26  to amend her complaint, the court concludes that further leave to amend is unwarranted.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1.  Defendant Santander's motion for partial summary judgment (dkt. no. 51) is GRANTED;

2.  Plaintiff's claim for violation of the federal Fair Debt Collection Practices Act is DISMISSED WITH PREJUDICE;

3.  Plaintiff's remaining state law causes of action for violation of the Rosenthal Fair Debt Collection Practices Act and invasion of privacy are DISMISSED WITHOUT PREJUDICE;

4.  Judgment is entered for defendant Santander; and

5.  The Clerk of Court is directed to close this case.

DATED: August 14, 2012

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
Meyer.2786..msj.wpd